1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CRAIG DOUGLAS ALLEN,                    No. 2:20–cv–1853–JAM–KJN PS

12                  Plaintiff,               FINDINGS AND RECOMMENDATIONS ON
                                             MOTION TO DISMISS
13          v.
                                             (ECF No. 29.)
14   CITRUS HEIGHTS POLICE DEPT., et al.,

15                  Defendants.

16

17          Currently pending before the undersigned[1] is defendant Citrus Heights Police

18   Department's motion to dismiss under Rule[2] 12(b)(6) for failure to state a claim.  (ECF No. 29.)

19          The undersigned recommends Citrus Heights's motion be granted, and leave to amend be

20   denied.  The Section 1983 and Penal Code claims against the Citrus Heights Police Department

21   should be dismissed with prejudice, and the court should decline supplemental jurisdiction over

22   the Records Act claim.  Additionally, the undersigned recommends the claims against all

23   unserved defendants be dismissed—with prejudice for any Section 1983 and criminal claims, and

24   without prejudice for any state law claims.  Alongside these dismissals, the district court should

25   deny as moot any outstanding discovery requests, and should direct the Clerk of the Court to

26   _____

27   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local
     Rule 302(c)(21) for the entry of findings and recommendations.  See Local Rule 304.

28   [2] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

                                                1

1   close this case.

2   **I.       BACKGROUND[3]**

3          Plaintiff is a user of an app owned by defendant MediaLab called Whisper, which allows

4   users to communicate anonymously.  (ECF No. 24 at 3.)  In the past few years, defendant Bert

5   Reed and numerous others allegedly began harassing plaintiff on Whisper.  (Id. at 2.)  Another

6   defendant, Matt Jacobs, allegedly tracked plaintiff to his home via Whisper, then reported to

7   Citrus Heights P.D. that plaintiff had kidnapped someone.  (Id.)  On September 14 and 15, Citrus

8   Heights P.D. sent officers to plaintiff's home to investigate.  (Id.)  The unnamed officers

9   "gain[ed] permission" to search plaintiff's properties and his cell phones, and detained plaintiff

10  during the search.  (Id.)

11         In late 2020, plaintiff filed a complaint in this court, and by spring 2021 paid the filing

12  fee.  (ECF Nos. 1, 10, 11.)  Plaintiff served defendant Citrus Heights Police Department, and

13  Citrus Heights moved for a more definite statement.  (See ECF No. 13.)  Plaintiff opposed, and

14  the court held a hearing by video conference on July 29, 2021.[4]  (ECF Nos. 15, 16, 19.)  After

15  some discussion with plaintiff, he agreed he could submit a revised complaint by the end of

16  August to clarify his claims.  Thus, court granted Citrus Heights' motion, provided plaintiff with

17  standards for amendment and citations to relevant case law, and advised him of his continuing

18  duty to serve the unserved defendants and follow all Federal and Local Rules.  (ECF No. 22.)

19         Plaintiff filed his first amended complaint ("1AC") on August 26, 2021, listing his claims

20  against each named defendant and numerous Doe defendants.  (ECF No. 24.)  Thereafter, Citrus

21  Heights moved to dismiss, and the court took the matter under submission without a hearing, per

22
23  [3] The facts herein are taken from the first amended complaint (ECF No. 24.), and are construed in
    the light most favorable to plaintiff—the non-moving party.  Faulkner v. ADT Sec. Servs., 706
24  F.3d 1017, 1019 (9th Cir. 2013).  However, any conclusory assertions stated in the complaint are
    not relied upon in the court's analysis below.  See Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th
25  Cir. 2009) (In deciding a motion to dismiss for failure to state a claim, the court need not rely on
    "legal conclusions merely because they are cast in the form of factual allegations.").

26
27  [4] Plaintiff also filed a motion for early discovery, in order to obtain police reports related to the
    September 2019 encounters.  (ECF No. 17.)  At the July 2021 hearing, defendant Citrus Heights
28  agreed to produce an unredacted copy of the report, and did so produce on August 10, 2021.
    (ECF No. 23.)  Plaintiff disputes that the entire report was produced.  (ECF No. 25.)

1  Local Rules 230(c) and (g), after plaintiff failed to file opposition.  (ECF Nos. 29, 30, 31.)

2  **II.      ISSUES**

3  In the 1AC, plaintiff cites to the following sources of law as against the Department: 42

4  U.S.C. Section 1983 (for alleged violations of his First and Fourth Amendment rights); the

5  California Records Act; and Cal. Penal Code Sections 422 (criminal threats), 236 (false

6  imprisonment), and 118.1 (false reporting).  Citrus Heights Police Department, the only defendant

7  to have been served, moves to dismiss all claims against it under Rule 12(b)(6) because:

8  1.  The 1AC clearly indicates the responding officers were motivated to
        investigate a reported kidnapping, not plaintiff's alleged political speech;
9  2.  Plaintiff consented to the searches, there otherwise was exigent
        circumstances to do so without a warrant given the kidnapping report, and
10       his detention was justifiable as incident to the search;
11 3.  Though plaintiff has named the Citrus Heights Police Department, the
        1AC fails to state a claim for any unconstitutional policy or custom;
12 4.  There is no right to monetary damages for alleged violations of the
        Records Act—which only requires a response within 10 days and not
13       production of all records; and
14 5.  Private citizens have no authority to bring claims under criminal statutes.

15 (ECF No. 29.)  Plaintiff did not file an opposition.  This failure is construed as his consent to

16 dismissal.  See Local Rule 230(c) (noting opposition is due within 14 days of the hearing, and

17 "failure to file a timely opposition may also be construed by the Court as a non-opposition to the

18 motion").

19 **III.     LEGAL STANDARDS**

20 **Legal Standards – Failure to State a Claim under Rule 12(b)(6)**

21 A claim may be dismissed because of the complaint's "failure to state a claim upon which

22 relief can be granted."  Rule 12(b)(6).  A complaint fails to state a claim if it either lacks a

23 cognizable legal theory or sufficient facts to allege a cognizable legal theory.  Mollett v. Netflix,

24 Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  To avoid dismissal for failure to state a claim, a

25 complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic

26 recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

27 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action,

28 supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678

3

(2009).  Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff, see Papasan v. Allain, 478 U.S. 265, 283 (1986).  However, the court may disregard "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071.

Pro se pleadings are to be liberally construed.  Hebbe v. Pliler, 627 F.3d 338, 342 & fn.7 (9th Cir. 2010) (liberal construction appropriate even post–Iqbal).  Prior to dismissal, the court is to tell the plaintiff of deficiencies in the complaint and provide an opportunity to cure—if it appears at all possible the defects can be corrected.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).  However, if amendment would be futile, no leave to amend need be given.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**Legal Standards - Subject Matter Jurisdiction and Frivolity**

Federal courts lack subject matter jurisdiction to consider claims that are "so insubstantial, implausible, foreclosed by prior decisions of this court, or otherwise completely devoid of merit as not to involve a federal controversy."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998); Hagans v. Lavine, 415 U.S. 528, 537 (1974) (court lacks subject matter jurisdiction over claims that are "essentially fictitious," "obviously frivolous" or "obviously without merit"); see also Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 549-50 (9th Cir. 2018) (noting that the "wholly insubstantial and frivolous" standard for dismissing claims operates under Rule 12(b)(1) for lack of federal question jurisdiction).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory, or where the factual contentions are clearly baseless.  Id. at 327.  Courts have long held that

4

private citizens cannot bring claims under criminal statutes.  See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action under criminal statutes).

## IV.    DISCUSSION

### A.  Plaintiff's Claims against Citrus Heights P.D. (and Unnamed Officers)

Title 42 U.S.C. Section 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" against a person acting "under color of any statute, ordinance, regulation, custom, or usage."  Gomez v. Toledo, 446 U.S. 635, 639 (1980).  "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred."  Graham v. Connor, 490 U.S. 386, 393–394 (1989).  Thus, to state a claim for relief under Section 1983, a plaintiff must allege that the defendant (1) acted under color of state law; and (2) caused a plaintiff to be deprived of a right secured by the Constitution or laws of the United States.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).

Key to any allegation under Section 1983 against an individual officer is the requirement that facts be stated as to that specific officer's conduct.  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (noting that the causation inquiry for Section 1983 claims "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation").  An officer "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Further, "local-government entities are considered 'persons' under Section 1983 and therefore may be liable for causing a constitutional deprivation."  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978).  However, these entities are only liable "for injuries that arise from an official policy or longstanding custom."  Id. at 694.  Thus, to raise a Monell claim, a plaintiff must allege facts in a complaint "that a [municipal] employee committed the alleged

constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).  In addition, a plaintiff must allege facts demonstrating that the policy was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

**1. First Amendment Claim**

In order to allege a First Amendment violation, plaintiff must state facts indicating that "by his actions [the defendant] deterred or chilled [plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct."  Sloman v. Tadlock, 21 F.3d 1462, 1469 (9th Cir. 1994).  As with all Section 1983 claims, the causation inquiry must be specific as to each officer's conduct, and so the 1AC must detail how each officer's acts were motivated by plaintiff's alleged political speech.  See Leer, 844 F.2d at 633.

Here, assuming for the sake of argument plaintiff's conduct on the Whisper app is protected speech, the 1AC makes no attempt to identify the individual officers who plaintiff encountered in September.  Instead, plaintiff simply states "Citrus Heights Police department took a prank call, failed to investigate the calls['] veracity . . ., [and] chose to raid my house to teach me a lesson." (ECF No. 24 at 2.)  In the order on Citrus Heights's motion for a more definite statement, the court instructed plaintiff about the need to detail each officer's acts.  (See ECF No. 22 at 5 (citing to the causation standards relied upon herein).)  This failure to provide facts about the individual officers' actions, at a minimum, requires dismissal of the First Amendment claim. See Lacey, 693 F.3d at 915 (noting the causation inquiry requires allegations that the individual officer either (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury").

If the individualized inquiry were the only issue, the undersigned believes it is likely plaintiff could attempt to cure the defect with a little research and more detail about the involved officers' acts.  However, as Citrus Heights correctly notes, the 1AC also fails to allege facts

6

indicating any officer took any action substantially motivated by an intent to abridge plaintiff's alleged political speech.  Instead, the 1AC simply states, in a conclusory manner, that the Department had "the intent to violate my first amendment right to free political speech."  (ECF No. 24 at 2.)  Conclusory assertions cannot defeat a motion to dismiss for failure to state a claim. Twombly, 550 U.S. at 555-57 (noting that to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions" or "labels and conclusions").  And it is here where plaintiff's First Amendment claim ultimately fails on the merits, as the 1AC states the unnamed officers were motivated by a very different rationale—responding to a report of a kidnapping.  (ECF No. 24 at 2.)  Regardless of the fact that plaintiff contends it was a false report, the 1AC appears to accept that the officers' motivations as investigatory—on the kidnapping report, and not plaintiff's alleged speech.  See, e.g., Glair v. City of Los Angeles, 2010 WL 1407357, at *8 (C.D. Cal. Feb. 17, 2010) (recommending dismissal of First Amendment claim with prejudice, where reasonable inference from allegations pointed to officers' intent to investigate plaintiff's potentially-illegal acts—and not his speech, and where no arrest was made), report and recommendation adopted, 2010 WL 1403947 (C.D. Cal. Apr. 5, 2010), aff'd, 437 F. App'x 603 (9th Cir. 2011) (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

For these reasons, leave to amend plaintiff's First Amendment claim, as against the investigating officers, should be denied as futile.  Cahill, 80 F.3d at 339.

**2. Fourth Amendment Claims**

Similar to the First Amendment claim, the two Fourth Amendment claims fail to state a claim due to the 1AC's lack of detail about any individual officer's actions in searching plaintiff's property and in detaining him during the search.  See Leer, 844 F.2d at 633.  Instead, the 1AC again only alleges unconstitutional conduct by the "Citrus Heights Police department."  (ECF No. 24 at 2-3.)  This paragraph also attempts to rely on conclusory assertions, such as that "all standard police procedures" were ignored, that "intimidation and threats" were used, and that the properties and phones were "illegally search[ed]."  (See Id.)  As noted above, conclusory assertions cannot defeat a motion to dismiss for failure to state a claim.  Twombly, 550 U.S. at 555-57.  Thus, the Fourth Amendment claim as stated in the 1AC must be dismissed.

7

1        Further, individuals may consent to searches by law enforcement without the need for a

2   warrant.  See United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000).  Plaintiff alludes to

3   the fact that the unnamed officers gained plaintiff's consent to search through "intimidation and

4   threats."  (ECF No. 24.)  The facts in the 1AC indicate that, on the totality, plaintiff's consent

5   could be deemed voluntary, given that there are no allegations about guns drawn, Miranda

6   warnings, withholding of information, or warrants.  See Id.  However, more information would be

7   needed about the voluntariness of his consent.  See, e.g., Liberal v. Estrada, 632 F.3d 1064, 1082

8   (9th Cir. 2011) (noting five primary factors used to determine voluntariness of any consent).

9        Again, if the lack of detail were the only issue, plaintiff could be afforded leave to amend

10  in order to state sufficient detail on either of his Fourth Amendment claim—this despite the

11  court's previous instructions on what must be alleged in order to state claims under Section 1983.

12  Lopez, 203 F.3d at 1130-31.  However, the facts provided in the 1AC counsel against granting

13  leave to amend for two specific reasons.  First, as Citrus Heights notes, the officers were

14  investigating a report of a kidnapping, and the law affords for such a waiver of the warrant

15  requirement under the "exigent circumstances" exception.  U.S. v. Brooks, 367 F.3d 1128, 1135

16  (9th Cir. 2004) ("[E]xigent circumstances as those circumstances that would cause a reasonable

17  person to believe that entry . . . was necessary to prevent physical harm to the officers or other

18  persons, the destruction of relevant evidence, the escape of the suspect, or some other

19  consequence improperly frustrating legitimate law enforcement efforts."); see, generally,

20  Missouri v. McNeely, 133 S. Ct. 1552, 1558-59 (2013) (noting that certain "exigent"

21  circumstances can provide law enforcement with broader authority to conduct searches and

22  seizures without a warrant).  Second, officers are granted authority to detain individuals during a

23  search.  Muehler v. Mena, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a

24  search is categorical; it does not depend on the quantum of proof justifying detention or the extent

25  of the intrusion to be imposed by the seizure.").  Thus, plaintiff's detention during the search does

26  not appear to raise any Fourth Amendment issue.

27        Based on the factual scenario presented in the 1AC, allowing for leave to amend on the

28  Fourth Amendment claims would be futile.  Cahill, 80 F.3d at 339.

8

### 3.  Section 1983 Claims under <u>Monell</u>

Plaintiff's complaint, as written, lacks any facts indicating a viable <u>Monell</u> claim exists. The 1AC merely names "Citrus Heights Police department" as a defendant, without any allegations as to any longstanding policy, custom, or practice.  (ECF No. 24 at 2-3.)  This is insufficient to state a claim under <u>Monell</u>.  <u>See, e.g.</u>, <u>Morrison v. City of Los Angeles</u>, 2019 WL 3017762, at *6 (C.D. Cal. July 10, 2019).  Conclusory assertions are also insufficient.  <u>See, e.g.</u>, <u>Estate of Mendez v. City of Ceres</u>, 390 F. Supp. 3d 1189, 1207 (E.D. Cal. 2019) ("Plaintiffs have only included one conclusory statement—that the Doe defendants who shot Carmen or failed to intercede 'were inadequately . . . disciplined' as a result of 'lack of proper training, pursuant to policy, or the result of the lack of policy.'  That one statement is not sufficient to support a claim that Defendants have adopted an unconstitutional practice or custom of inadequate discipline [for] excessive force.").

Further, from the facts presented in the 1AC, it does not appear plaintiff has any potential Section 1983 claims against individual officers.  <u>See</u> Sections 1-2, above.  Without an individualized constitutional violation, there can be no <u>Monell</u> claim.  <u>See</u> <u>Gillette</u>, 979 F.2d at 1346 (recognizing that <u>Monell</u> claims require allegations "that [the] employee committed [an] alleged constitutional violation").  Thus, providing leave to amend any <u>Monell</u> claim against the Department for the mid-September incident would be futile.  <u>Cahill</u>, 80 F.3d at 339.

### 4.  Claim under the California Records Act

It appears the 1AC attempts to allege a claim under Cal. Gov. Code Sections 6250, et seq. by stating that the "Citrus Heights Police department . . . intentionally and illegally gave me a 100% redacted police report . . . intended to do as much psychological harm as possible."  (ECF No. 24 at 2-3.)  The 1AC concludes with a prayer for "unspecified compensatory and punitive damages from each defendant for physical and mental distress, payment of approximately $250,000 in medical bills along with reasonable attorney fees."  (Id. at 4.)  In the summer of 2021, plaintiff moved to have Citrus Heights produce an unredacted copy of the reports.  Counsel for the Department agreed to look into the matter, and on August 10 notified the court that an unredacted copy was provided.  The 1AC asserts the September 15 report is still outstanding.

9

1    Cal. Gov. Code Section 6253 states:

2    (a) Public records are open to inspection at all times during the
     office hours of the state or local agency and every person has a right
3    to inspect any public record, except as hereafter provided . . . .

4    (b) Except with respect to public records exempt from disclosure by
     express provisions of law, each state or local agency, upon a request
5    for a copy of records that reasonably describes an identifiable
     record or records, shall make the records promptly available to any
6    person upon payment of fees covering direct costs of duplication, or
     a statutory fee if applicable. Upon request, an exact copy shall be
7    provided unless impracticable to do so.

8    (c) Each agency, upon a request for a copy of records, shall, within
     10 days from receipt of the request, determine whether the request,
9    in whole or in part, seeks copies of disclosable public records in the
     possession of the agency and shall promptly notify the person
10   making the request of the determination and the reasons therefor.

11   Thus, a plain read of the statute indicates that if a record is in fact public, an individual may

12   request a copy, and the agency is required to determine the public nature of the information.

13   California case law further indicates that an agency in violation of its disclosure obligations may

14   expose itself to a writ to compel production of the records.  See, e.g., Weaver v. Superior Ct., 224

15   Cal. App. 4th 746, 748 (2014) ("In this writ proceeding, petitioner . . . seeks various records from

16   the District Attorney's Office of San Diego County (District Attorney) under the California Public

17   Records Act (CPRA; Gov.Code,1 § 6250, et seq.) to assist in investigating whether the District

18   Attorney impermissibly sought the death penalty based on the race of the defendant, the victim, or

19   both.").  However, as Citrus Heights correctly notes, the 1AC does not request a writ, but instead

20   seeks only monetary damages.  Thus, any Records Act claim in the 1AC should be dismissed.

21       As for amendment, the undersigned recommends denial of leave to amend.  Should the

22   district court accept the undersigned's recommendations on the Section 1983 claims, no federal

23   question would remain in this case.  Because there are no feasible diversity allegations against

24   Citrus Heights, the court should decline to retain jurisdiction over the Records Act claim.  28

25   U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a

26   claim if . . . the district court has dismissed all claims over which it has original jurisdiction.").

27   The dismissal of the Records Act claim would be without prejudice, thereby allowing plaintiff to

28   seek a writ in state court regarding any missing records, should he wish to do so.

10

Further, it appears plaintiff's request for early discovery has yet to be fully resolved. (See ECF No. 17, 25.) Insomuch as plaintiff's request for the September 15 police report is a motion to compel discovery, the motion should be denied as moot—given the undersigned's recommendations to dismiss all claims against Citrus Heights and close this case.

**5. Claims under Cal. Penal Code**

In the order on defendant's motion for a more definite statement, the court explicitly informed plaintiff that "[p]rivate citizens have no authority to bring claims under criminal statutes . . . ." (ECF No. 22 at 5 (citing Allen, 464 F.3d at 1048 (no private right of action for violation of criminal statutes)).) Despite this instruction, plaintiff appears to be trying to assert claims against Citrus Heights under Cal. Penal Code Sections 422 (criminal threats), 236 (false imprisonment), and 118.1 (false reporting). (See ECF No. 24 at 2-3.)

To the extent these claims are asserted against Citrus Heights or any unnamed officers, they are frivolous on their face and are therefore subject to dismissal with prejudice. Allen, 464 F.3d at 1048; see also, e.g., Camden USA, Inc. v. Kaplan, 2021 WL 3163619, at *7 (C.D. Cal. Apr. 21, 2021) ("California Penal Code section 422(a) is a criminal law and does not provide Plaintiffs a private right of action.") (citing Dziubla v. Piazza, 59 Cal. App. 5th 140, 155 n.8 (2020) (same)); Archambault v. ADESA Golden Gate, 2008 WL 5099648, at *3 (E.D. Cal. Nov. 25, 2008) (holding that there is no private right of action under California Penal Code section 236); Willis v. City of Los Angeles, 57 F. App'x 283, 289 (9th Cir. 2002) (holding perjury and filing false police reports, as per California Penal Code §§ 118 and 118.1 do not create private rights of action).

**B. Remaining Named Defendants (Private Citizens and Corporations)**

The source of plaintiff's claims in the 1AC against the unserved private defendants Bert Reed, Matt Jacobs, and Media Lab.IA appear to be rooted in one of three general categories of law: claims under Section 1983 (First Amendment), claims under criminal statutes (18 U.S.C. and Cal. Penal Code), and claims under state law (fraud, libel, harassment, defamation). These claims should also be dismissed.

////

1    Although the 1AC attempts to raise claims under 42 U.S.C. Section 1983, such claims

2   generally cannot lie against a private individual or business entity, as they generally do not act

3   under color of state law.   See Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002).  Also, as noted

4   above, plaintiff is a private citizen and has no authority to bring criminal charges against other

5   private citizens.  Allen, 464 F.3d at 1048.  Thus, these claims should be dismissed with prejudice.

6    As to the state law claims for fraud, libel, harassment, and defamation, the court should

7   decline to retain supplemental jurisdiction over them, per 28 U.S.C. Section 1367(c)(3).  Thus,

8   dismissal would be without prejudice, allowing plaintiff to raise any state law claims against the

9   private defendants in state court, should he choose to do so.

10                                        **RECOMMENDATIONS**

11    Accordingly, IT IS HEREBY RECOMMENDED that:

12    1.   Defendant Citrus Heights motion to dismiss (ECF No. 29) be GRANTED;

13    2.   Leave to amend be DENIED;

14    3.   Plaintiff's claims against Citrus Heights under 42 U.S.C. Section 1983 and the Cal.

15          Penal Code be DISMISSED WITH PREJUDICE;

16    4.   The court DECLINE supplemental jurisdiction, per 28 U.S.C. Section 1367(c)(3), for

17          the claim brought under Cal. Gov. Code Section 6250 alleging a failure to disclose the

18          mid-September 2019 police reports;

19    5.   All claims against the private defendants Reed, Jacobs, and Media Lab brought under

20          Section 1983 and the criminal statutes (18 U.S.C. and Cal. Penal Code) be

21          DISMISSED WITH PREJUDICE;

22    6.   The court DECLINE supplemental jurisdiction, per 28 U.S.C. Section 1367(c)(3), for

23          any state-law claims against defendants Reed, Jacobs, and Media Lab;

24    7.   To the extent plaintiff's motion for discovery (ECF No. 17) is outstanding, it be

25          DENIED as moot; and

26    8.   The Clerk of the court be directed to CLOSE this case.

27    These findings and recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  October 22, 2021

alle.1853

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE